100 P.3d 805 (2004)
In re the Personal Restraint of Christopher M. LaCHAPELLE, Petitioner.
In re the Personal Restraint of Christopher R. Westfall, Petitioner.
Nos. 73794-1, 74092-5.
Supreme Court of Washington, En Banc.
Argued February 24, 2004.
Decided November 18, 2004.
*807 Christopher LaChapelle, Pro se, Christopher Ross Westfall, Pro se, and Suzanne Lee Eliott, Seattle, for Petitioners.
Gerald Horne, Pierce County Prosecutor, Kathleen Proctor, John Michael Sheeran, Tacoma, Jeremy Randolph, Lewis County Prosecutor, Chehalis, for Respondent.
*806 CHAMBERS, J.
We are asked again to examine the 1997, 2000, and 2002 amendments to the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW. We adhere to our decisions in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), State v. Smith, 144 Wash.2d 665, 30 P.3d 1245 (2001), and State v. Varga, 151 Wash.2d 179, 86 P.3d 139 (2004), and hold that under the 2000 amendment to the SRA, the trial court should not have counted previously "washed out" convictions in calculating an offender score for the purpose of sentencing. We therefore reverse and remand for the petitioners to be resentenced.
Christopher M. LaChapelle was born in 1981, and turned 15 on April 25, 1996. In March 1995, when he was 13, LaChapelle committed third degree assault. Then in November 1996, when he was 15, LaChapelle committed burglary.[1]
Christopher R. Westfall was born in 1982, and turned 15 on September 10, 1997. In March 1997, when he was 14, Westfall committed second degree possession of stolen property.[2] Then in August 1998, when he was 15, Westfall committed forgery.[3]
Prior to the 1997 SRA amendment, juvenile offenses committed before the age of 15 were not included as prior offenses in the calculation of offender scores for current offenses. Former RCW 9.94A.030(12)(b)(ii) (1996); Smith, 144 Wash.2d at 671, 30 P.3d 1245. Therefore, the offense committed by LaChapelle when he was 13 and the offense committed by Westfall when he was 14 were not included in the definition of "criminal history" before the 1997 amendment to the SRA. Before the 1997 amendment to the SRA, offenses committed before age 15 were often described as washed out because they were not included in defendants' criminal histories nor used to calculate their offender scores. However, technically, the offenses never existed as criminal history in the first place, and therefore nothing existed to be washed out. The 1997 SRA amendment changed the definition of "criminal history" so that juvenile offenses committed both before and after the age of 15 no longer washed out and are to be included as prior offenses in the calculation of offender scores for current offenses. LAWS OF 1997, ch. 338, § 2; former RCW 9.94A.030(12)(b) (1997). Criminal history under the 1997 SRA amendment was defined as "the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." Id. § .030(12).
After the 1997 amendment to the SRA, LaChapelle was convicted of first degree robbery and first degree kidnapping with a firearm enhancement. These offenses occurred on January 18, 1998. At sentencing, the trial court calculated his offender score by including his March 1995 offense even though he was under 15 at the time and the crime was committed before the 1997 SRA amendment. Similarly, after the 1997 amendment, Westfall was convicted of first degree conspiracy to commit robbery, robbery in the first degree, second degree possession of a firearm, and possession of a stolen firearm. These offenses occurred on November 10, 1998. At sentencing, the trial court calculated his offender score for each offense by including his *808 March 1997 offense even though it was committed before the 1997 SRA amendment took effect. Both young men filed personal restraint petitions; we granted review and consolidated both petitions.

STANDARD OF REVIEW
Our review is de novo because statutory interpretation is a question of law. State v. Beaver, 148 Wash.2d 338, 344, 60 P.3d 586 (2002). However, under the doctrine of stare decisis, "once we have `decided an issue of state law, that interpretation is binding until we overrule it.'" Soproni v. Polygon Apartment Partners, 137 Wash.2d 319, 327 n. 3, 971 P.2d 500 (1999) (quoting Hamilton v. Dep't of Labor & Indus., 111 Wash.2d 569, 571, 761 P.2d 618 (1988)).

ANALYSIS

TIME BAR
Generally, collateral attacks on judgments and sentences are prohibited if not brought within one year of becoming final. RCW 10.73.090(1). However, the one-year statutory time bar is not applicable to judgments and sentences that appear facially invalid. Id. A sentence, which was improperly calculated using previously washed out juvenile offenses, is invalid on its face. In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 865-67, 50 P.3d 618 (2002). Because LaChapelle and Westfall have met their prima facie burden of demonstrating that their sentences were invalid on their face, their petitions are not time barred. Id.

SRA HISTORY
The SRA became effective in 1984. It attempted to create more certainty and uniformity in sentencing, to make sentencing more dependent upon the crime committed and criminal history of the offender, and to reduce the discretion of trial judges. David Boerner & Roxanne Lieb, Sentencing Reform in the Other Washington, 28 CRIME & JUST. 71, 84-87 (2001). The SRA utilizes objective criteria to establish sentencing ranges. The sentencing judge must calculate, in a mathematical fashion, an offender score for each offense. This score determines the sentencing range applicable to the offender. The calculation may require not only the analysis of statutes of other states but also analysis and coordination of numerous amendments to the SRA.
The difference of a single point may add or subtract three years to an offender's sentence. Therefore, the accurate interpretation and application of the SRA is of great importance to both the State and the offender. Because each offense must be analyzed under the law in effect at the time the offense was committed, each time the SRA is amended, it adds an additional level of complexity to the task of the courts, as well as the prosecution, the defense, and the Department of Corrections. State v. Jones, 118 Wash.App. 199, 76 P.3d 258 (2003), is illustrative. In Jones, the trial court was required to analyze and attempt to harmonize three separate amendments to the SRA. As Judge Dean Morgan observed in Jones, "[i]t is extremely difficult to identify what statute applies to a given crime, much less to coordinate that statute with others that may be related." Id. at 211-12, 76 P.3d 258. Since the SRA was adopted in 1981, it has been amended by 181 session laws.[4] The complexity and difficulty applying the SRA is exacerbated by each successive change to the SRA. Interpreting and harmonizing amendments to the SRA has increasingly occupied the time of both trial and appellate courts. In all likelihood this trend will continue. In the 58th legislature alone, 97 bills were introduced, which proposed a total of 262 changes to the SRA. Not withstanding constant modifications *809 to the law, courts strive to make the law clear, understandable, and predictable.

RETROSPECTIVITY AND PROSPECTIVITY OF SENTENCING AMENDMENTS
Our holding is controlled by three of our prior decisions dealing with retrospectivity and prospectivity of sentencing amendments: Cruz, Smith, and Varga. We recently analyzed Cruz and Smith in Varga. All these cases required us to apply successive amendments to the SRA, which changed the basis for offender score calculations. Offender scores, of course, determine presumptive sentencing ranges. As we noted in Cruz, before the 1990 amendment to the SRA, a defendant who had 10 years in the community without a felony conviction was effectively entitled to have that conviction disappear from the calculation of his offender score. Cruz, 139 Wash.2d at 189, 985 P.2d 384; former RCW 9.94A.360 (1988 Supp.). Cruz was convicted of rape in 1975 and spent more than 10 years in the community without another felony conviction. Cruz, 139 Wash.2d at 188, 985 P.2d 384. His conviction had washed out. Id. at 189, 985 P.2d 384. In 1990, the legislature amended the statute by eliminating sex offenses from the wash out provision. LAWS OF 1990, ch. 3, § 706. In 1994, Cruz was charged and found guilty of the rape of a child in the first degree. Cruz, 139 Wash.2d at 187, 985 P.2d 384. His 1975 conviction was included in his offender score. Id. at 188, 985 P.2d 384. The issue before the court was whether by resurrecting Cruz's 1975 conviction the 1990 amendment to the SRA violated federal and state constitutional protections against ex post facto legislation. However, upon review, we found it unnecessary to reach the constitutional issues because we found no legislative intent to apply the legislation retroactively.
The presumption against retroactive application of a statute "is an essential thread in the mantle of protection that the law affords the individual citizen. That presumption `is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" Lynce v. Mathis, 519 U.S. 433, 439, 117 S.Ct. 891, 895, 137 L.Ed.2d 63 (1997) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994)). See also In re Personal Restraint of Shepard, 127 Wash.2d 185, 193, 898 P.2d 828 (1995) (court presumes newly enacted statutes operate prospectively). The constitutional prohibition against ex post facto legislation is but a further manifestation of the repugnance with which such retroactive legislation is viewed. See Landgraf, 511 U.S. at 266, [114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)].
Cruz, 139 Wash.2d at 190-91, 985 P.2d 384.
In Cruz, we also observed that assuming constitutional concerns were satisfied, the SRA could be applied retroactively, but only if the legislative intent to do so is clearly found within the statute's language. Id. at 191, 985 P.2d 384. We determined that the legislature intended that the 1990 SRA amendments apply prospectively. Id. We reasoned that the 1990 amendments would have to be applied retroactively to require Cruz's sentencing court to include his previously washed out 1975 rape conviction when calculating Cruz's offender score because "[t]he 1990 change to the SRA would not serve to change Cruz's existing criminal history (which did not include the 1975 rape as it had washed out in 1987) unless it was applied retroactively" to revive the previously washed out offense. Id. at 193, 985 P.2d 384.
The legislature responded with additional amendments to the SRA. Smith, 144 Wash.2d at 672, 30 P.3d 1245; LAWS OF 2000, ch. 26, § 2. The relevant 2000 SRA amendment stated: "Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." LAWS OF 2000, ch. 26, § 2. In a statutory note, the legislature explained:
This act is intended to cure any ambiguity that might have led to the Washington supreme court's decision in State v. Cruz, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. This act is also intended to *810 clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.
LAWS OF 2000, ch. 26, § 1.
In Smith, we again addressed the issue of the prospectivity or retroactivity of changes in criminal history. Smith, 144 Wash.2d at 672-75, 30 P.3d 1245. In Smith, we examined four consolidated cases, which we described as involving previously washed out criminal history. Id. at 668, 30 P.3d 1245. One of the cases, Lowe, involved facts legally indistinguishable from the cases now before us. Id. at 669, 30 P.3d 1245. Our opinion in Smith observed that the legislature had expressed discontent with our opinion in Cruz, and that the 2000 amendments contained no language showing the legislature intended the 1997 amendment to apply retroactively. Id. at 672-73, 30 P.3d 1245; accord Varga, 151 Wash.2d at 184-85, 86 P.3d 139. We concluded that the 1997 amendment was neither curative nor remedial and could not be applied retroactively to revive appellants' previously washed out convictions. Smith, 144 Wash.2d at 674, 30 P.3d 1245.
Following our opinion in Smith, the legislature again responded with another SRA amendment. Varga, 151 Wash.2d at 183, 86 P.3d 139; LAWS OF 2002, ch. 107, § 1. Criminal history was redefined.[5] Additionally, the amendment provided:
The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. Accordingly, prior convictions that were not counted in the offender score or included in criminal history under repealed or previous versions of the sentencing reform act shall be included in criminal history and shall count in the offender score if the current version of the sentencing reform act requires including or counting those convictions.
LAWS OF 2002, ch. 107, § 3(18). Lastly, the legislature stated that the 2002 SRA amendment applies "only to current offenses committed on or after the effective date of this act. No offender who committed his or her current offense prior to the effective date of this act may be subject to resentencing as a result of this act." LAWS OF 2002, ch. 107, § 4. The amendments went into effect on June 13, 2002. RCW 9.94A.525, .030.
In Varga, we again agreed to examine the consolidated petitions of eight persons who were sentenced for offenses which occurred after the effective date of the 2002 amendment to the SRA. Varga, 151 Wash.2d at 187, 86 P.3d 139. Our task was to determine whether, following the 2002 amendment to the SRA, it was proper for the sentencing judges to include convictions which would have washed out based upon prior statutes and court opinions. Id. We interpreted the 2002 amendment to the SRA as a clear expression from the legislature within the statute itself to redefine "criminal history" to be applied prospectively rather than retrospectively. Id. at 191, 193, 86 P.3d 139. In Varga, we stated, "[h]ere, the legislature clearly intended that the amendments apply prospectively at sentencing for crimes committed on or after June 13, 2002." Id. at 190-91, 86 P.3d 139. We further stated:
These amendments explicitly state that a defendant's criminal history includes "washed out" convictions. LAWS OF 2002, *811 ch. 107, § 2(13). Further, the legislature directed sentencing courts to consider these previously "washed out" convictions when calculating offender scores if the current version of the SRA requires consideration of that type of conviction. LAWS OF 2002, ch. 107, § 3(18).
Id. at 191, 86 P.3d 139.
To review, we have applied sentencing statutes prospectively and have thus declined to apply the definition of criminal history to retroactively revive previously washed out convictions. See Smith, 144 Wash.2d at 674-75, 30 P.3d 1245 (holding 1997 SRA amendment does not apply retroactively to revive appellants' previously washed out juvenile adjudications); see Cruz, 139 Wash.2d at 193, 985 P.2d 384 (holding 1990 SRA amendment does not apply retroactively to revive defendant's 1975 offense that washed out under former version of the SRA); see In re Pers. Restraint of Williams, 111 Wash.2d 353, 361, 759 P.2d 436 (1988) (holding 1986 SRA amendment to wash out provision which took effect after defendant's sentencing not applicable); cf. State v. Dunaway, 109 Wash.2d 207, 216, 743 P.2d 1237, 749 P.2d 160 (1987) (holding 1987 SRA amendments to definition of "`[s]ame criminal conduct'" not applicable to defendants' 1984 and 1986 offenses). In Varga, we recognized a clearly stated legislative intent announced in the 2002 SRA amendment. Under the current SRA, no offender has a vested right in the definition of criminal history in effect when a previous crime was committed. The legislature has asserted the power to change the way offender scores are calculated. LAWS OF 2002, ch. 107, § 1. As we stated in Varga, "[t]he legislature may prospectively amend the SRA to require that courts include previously `washed out' convictions when calculating offender scores and has done so by the plain language of the 2002 SRA amendments." Varga, 151 Wash.2d at 202, 86 P.3d 139. Courts are to apply the definition of criminal history in effect at the time the offense was committed to calculate the sentence for that offense.
It is important that the law be clear, understandable, and predictable. Accordingly, we follow the doctrine of stare decisis and our analysis of the respective amendments to the SRA in Cruz, Smith, and Varga. The circumstances presented by LaChapelle and Westfall[6] are not precisely the same as those presented in Cruz. In Cruz, the appellant's 1975 conviction counted as "criminal history" but then washed out because he went 10 years after his release without a conviction. LaChapelle and Westfall's convictions for offenses before their 15th birthdays never counted as criminal history; so they technically never washed out because they never existed as criminal history under the SRA in effect at the time of their offense.
Analytically, however, we see little difference between offenses that wash out by the passage of time and those that never counted as "criminal history." The circumstances of defendant Michael Lowe in Smith are legally indistinguishable from those of LaChapelle and Westfall. Although Lowe's juvenile offenses never counted as part of his criminal history, we treated them as having been "previously washed out because they occurred before he reached age 15." Smith, 144 Wash.2d at 669, 30 P.3d 1245. Whether criminal history is erased by time or simply did not exist because of statute is immaterial to our analysis of retroactive or prospective application. LaChapelle and Westfall committed their offenses before the 2002 amendment to the SRA, and therefore are controlled by our decision in Smith. Consequently, LaChapelle and Westfall's juvenile convictions committed before the age of 15 are not to be counted in calculating their offender scores for these offenses.[7]

*812 CONCLUSION
In Cruz and Smith, we concluded that the 1997 and 2000 amendments to the SRA, respectively, did not clearly express an intent to include convictions which had previously been washed out or not counted as criminal history, and we declined to retroactively revive previously washed out offenses or criminal history that never existed. However, in Varga, we concluded that the 2002 amendment to the SRA clearly stated legislative intent to define "criminal history" in a new way to be applied prospectively. Under the 2002 amendment, offenders have no vested right in prior wash out provisions. They are subject to the "criminal history" statute in effect at the time of the offense.
We hew to our precedents in Cruz, Smith, and Varga. We hold that washed out offenses described in this opinion may not be counted in calculating offender scores for offenses which occurred before the effective date of the 2002 amendment to the SRA. We, therefore, reverse the cases before us and remand for resentencing consistent with this opinion.
ALEXANDER, C.J., and JOHNSON, SANDERS, and OWENS, JJ., concur.
MADSEN, J. (dissenting).
The majority misapplies recent case law from this court, overlooking important differences between this case and prior "wash out" decisions such as State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), and State v. Smith, 144 Wash.2d 665, 30 P.3d 1245 (2001). A careful review of those decisions shows that the majority's reasons for overturning the defendants' (Christopher LaChapelle and Christopher Westfall) sentences are not justified. The majority's result contravenes clear legislative intent and established principles of statutory interpretation. I respectfully dissent.

ANALYSIS
Unlike the sentences at issue in Cruz and Smith, these defendants' current sentences do not depend on resurrecting prior convictions through retroactive application of a legislative amendment. Instead, these defendants' sentences may be upheld under a wholly prospective application of the sentencing law in effect at the time of their present crimes. On this critical point the majority concedes that "technically ... [these juvenile] offenses never existed as criminal history [under the version of the SRA in effect at the time of their commission] in the first place, and therefore nothing existed to be washed out." Majority at 807. As the majority correctly notes, "[t]he 1997 SRA amendment changed the definition of `criminal history' so that juvenile offenses committed both before and after the age of 15 ... are to be included as prior offenses in the calculation of offender scores for current offenses." Id. at 807 (citing Laws of 1997, ch. 338, § 2; former RCW 9.94A.030(12)(b) (1997 Supp.)). Such undeniably clear legislative intent should not be ignored.
While the majority sees "little [analytical] difference between offenses, which wash out by the passage of time, and those that never counted as `criminal history' [in the first place]," id. at 811, the distinction is dispositive. First, this court has never recognized an absolute vested right in the law remaining static. See, e.g., State v. Hennings, 129 Wash.2d 512, 528, 919 P.2d 580 (1996) ("[a] vested right entitled to protection ... `must be something more than a mere expectation based upon an anticipated continuance of the existing law'" (quoting Caritas Servs., Inc. v. Dep't of Social & Health Serv., 123 Wash.2d 391, 414, 869 P.2d 28 (1994) (quoting In re Marriage of MacDonald, 104 Wash.2d 745, 750, 709 P.2d 1196 (1985)))). On this point the majority also concedes, again without *813 recognizing the practical significance of its concession, that courts must "apply the definition of criminal history in effect at the time ... [an] offense was committed to calculate the sentence for that offense." Majority at 811. The definition provided by the 1997 amendment could not have been clearer with respect to juvenile crimes.
Second, retroactive application presupposes the existence of a vested right which the defendants' never possessed. We conclusively established in State v. Varga, 151 Wash.2d 179, 183-84, 86 P.3d 139 (2004), that "`[w]hen the legislature enacted the sentencing reform act, chapter 9.94A RCW, and each time the legislature has amended the act, the legislature intended that an offender's criminal history and offender score be determined using the statutory provisions that were in effect on the day the current offense was committed.'" (emphasis added) (quoting Laws of 2002, ch. 107, § 1). As such, any claim of entitlement to exclude juvenile convictions from criminal history required not only the existence of prior convictions but also a vested legal right in their washed out status before the commission of a new offense. But these defendants had no right to expect that past juvenile offenses, which never washed out, might not someday count toward their criminal history.
Third, the amendment in question here serves only to enhance the penalty for crimes committed after its provisions became effective, and as such may be viewed as entirely prospective in nature. See, e.g., State v. Blank, 131 Wash.2d 230, 248, 930 P.2d 1213 (1997) ("`A statute operates prospectively when the precipitating event for [its] application... occurs after the effective date of the statute ....'" (alteration in original) (quoting Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974))); Landgraf v. USI Film Products, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("A statute does not operate `retrospectively' merely because it ... upsets expectations based in prior law.") (citing Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring in part, concurring in judgment)).
Finally, and of critical importance in distinguishing the instant case from both Cruz and Smith, the law in effect when these defendants committed their most recent crimes unambiguously provided for the inclusion of juvenile offenses in their criminal history. In fact, the legislative intent to include prior juvenile convictions in a defendant's criminal history could not have been clearer when the defendants' present crimes were committed. The 1997 amendment at issue expressly defined criminal history as:
[T]he list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere. The history shall include, where known (a) whether the defendant has been placed on probation and the length and terms thereof; and (b) whether the defendant has been incarcerated and the length of the incarceration.
Laws of 1997, ch. 338, § 2(12). In contrast, the legislative intent to revive previously washed out convictions, such as those at issue in Cruz and Smith, was not made sufficiently clear until well after the crimes at issue in those cases were committed.[1] As such, the fundamental concerns underlying our decisions in Cruz and Smith are simply not present here. In sum, the disputed elements of defendants' criminal history relate to offenses which, unlike the factually distinguishable category of "washed out" offenses considered in Cruz and Smith, were explicitly and clearly addressed by the legislature in 1997. Consequently, the trial court correctly applied the version of the SRA in effect when these defendants committed their most recent crimes.
*814 While recognizing that the defendants' past convictions never washed out, the majority nevertheless reaches a conclusion at odds with Varga by confusing the defendants' "criminal history" with its own hypothetical considerations of what their offender scores might have been under prior versions of the SRA. To this end, Varga plainly established that "`[t]he determination of a defendant's criminal history is distinct from the determination of an offender score. A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentencing reform act remains part of the defendant's criminal history.'" Varga, 151 Wash.2d at 184, 86 P.3d 139 (emphasis omitted) (quoting Laws of 2002, ch. 107, § 2(13)). Moreover, "[t]he legislature ... never intended to create in an offender a vested right with respect to whether a prior conviction is excluded when calculating an offender score or with respect to how a prior conviction is counted in the offender score for a current offense." Id. (quoting Laws of 2002, ch. 107, § 1).
Unfortunately, in following Cruz, Smith failed to recognize or discuss a crucial distinction between the sentence of one of the defendants in Smith, Mr. Lowe, and the sentences at issue in Cruz. Like the defendants here, defendant Lowe challenged inclusion of juvenile convictions. And, like these defendants, defendant Lowe derived no vested right in excluding prior convictions that never "washed out" such as those at issue in Cruz. Rather than build on an oversight in Smith, this court should recognize that juvenile convictions are addressed by express language in the 1997 amendment and require a different analysis than "washed out" crimes. There has never been any question that the legislature intended the 1997 version of RCW 9.94A.030, and its definition of "criminal history," apply in sentencing a defendant for offenses that were committed when the 1997 statute was in effect and which had not "washed out" under prior law. Our recognition of legislative intent dating back to the enactment of the SRA in 1984 eliminates any need to question when and how the 1997 version of RCW 9.94A.030 should have been applied by the trial court. Overturning these defendants' sentences represents not only an unjustifiable encroachment on the authority of the legislative branch but also blatantly disregards our own recent precedent. The law in effect when the defendants' juvenile offenses were committed, absent a legitimate claim of right to a washed out conviction, is entirely irrelevant.

CONCLUSION
Our decisions in Cruz and Smith were based on an apparent absence of legislative intent to revive previously washed out convictions. Unlike the convictions at issue in those cases, the defendants' juvenile convictions never washed out. Moreover, the definition of "criminal history" in effect when these defendants' present crimes were committed unambiguously provided for the inclusion of juvenile convictions. Properly construed, this case is not about revival but instead is about merely applying the sentencing law as the legislature intended it to be applied prospectively. There is simply no "retroactive" effect of the kind that Cruz, and ostensibly Smith, was trying to avoid. These defendants' past convictions were properly considered by the trial court in establishing their present criminal history.
BRIDGE, FAIRHURST and IRELAND, JJ., concur.
NOTES
[1] LaChapelle does not challenge the inclusion of this juvenile offense in the calculation of his offender score for each of his current offenses because it occurred after he turned 15, and the 1997 SRA amendment became effective before he turned 23. See State v. Perry, 110 Wash.App. 554, 42 P.3d 436 (2002).
[2] This offense was committed before the 1997 SRA amendment became effective on July 1, 1997. LAWS OF 1997, ch. 338, § 75.
[3] Westfall does not challenge the inclusion of this juvenile offense in the calculation of his offender score for each of his current offenses because it occurred after he turned 15, and the 1997 SRA amendment became effective before he turned 23. See Perry, 110 Wash.App. 554, 42 P.3d 436.
[4] Jones, 118 Wash.App. at 211 n. 32, 76 P.3d 258 (listing 175 session laws that amended the SRA; however, absent from this list was LAWS OF 2003, ch. 53). The 58th legislature also amended the SRA with five session laws in 2004. LAWS OF 2004, ch. 38; LAWS OF 2004, ch. 94; LAWS OF 2004, ch. 121; LAWS OF 2004, ch. 166; LAWS OF 2004, ch. 176. In all, the 58th legislature considered 97 bills that would have amended the SRA. Of those 97 bills considered, 14 were enacted. www.leg.wa. gov/pub/billinfo/2003-04/chaptertobilltable.htm (last checked May 11, 2004); www.leg.wa.go v/wsladm/billinfo1/rcwslselections.cfm?year=03 (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo1/rcwslselections.cfm (last checked May 11, 2004); www.leg.wa.gov/wsladm/billinfo/rcwtobilltable.cfm (last checked May 11, 2004).
[5] The relevant portion of the amendment is as follows:

(13) "Criminal history" means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere.
(a) The history shall include, where known, for each conviction (i) whether the defendant has been placed on probation and the length and terms thereof; and (ii) whether the defendant has been incarcerated and the length of incarceration.
(b) A conviction may be removed from a defendant's criminal history only if it is vacated pursuant to RCW 9.96.060, 9.94A.640, 9.95.240, or a similar out-of-state statute, or if the conviction has been vacated pursuant to a governor's pardon.
(c) The determination of a defendant's criminal history is distinct from the determination of an offender score. A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentence reform act remains part of the defendant's criminal history.
LAWS OF 2002, ch. 107, § 2(13).
[6] The State also contends that Westfall's offender score of three for each current offense was calculated without inclusion of his 1997 offense, which was committed at age 14. However, it was mathematically impossible for the trial court to compute an offender score of three without including one-half point for Westfall's 1997 offense.
[7] We respectfully disagree with the dissent's characterization of the governing question before the court. If we were writing on a clean slate, we might be persuaded that the dissent is correct that the 2000 and 2002 legislatures' clearly expressed intent is persuasive evidence of the 1997's legislature's intentions. However, we are not writing on a clean slate; we have already interpreted the 1997 amendment and found that it does not apply under these circumstances. See Smith, 144 Wash.2d at 674, 30 P.3d 1245. The distinction the dissent draws between a washed out conviction and a conviction that simply never existed for purposes of calculating an offender score is not a distinction that makes a difference under Smith, as the dissent impliedly acknowledges at pages 5-6. Adopting the dissent's approach would require this court to impliedly overrule Smith (and, therefore, the other cases that articulate the same principles, such as Cruz and Varga). Following the dissent would contribute to the constant tinkering with the SRA. It is better to adhere to stare decisis and provide clarity and predictability to a complex area of our law.
[1] As we noted in State v. Varga, 151 Wash.2d 179, 192, 86 P.3d 139 (2004) "[i]n both Cruz and Smith, we reached our decisions by construing the statutory terms of the SRA in effect at th[e] time." In Cruz, we found insufficient legislative intent to revive previously washed out convictions, concluding that "Cruz's `washed out' juvenile sex conviction no longer existed under the definition of criminal history ... in effect at that time.... Relying on Cruz, we reached a similar conclusion in Smith, holding that the 1997 and 2000 SRA amendments [similarly] failed to evidence sufficient retroactive intent." Varga, 151 Wash.2d at 192, 86 P.3d 139.